UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOHAMED ABO ALI,

                    Plaintiff,

         -against-

AMERICAN UNIVERSITY OF ANTIGUA,
INC.; MANIPAL EDUCATION AMERICAS,
LLC,

                 Defendants.

1:25-CV-2065 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff Mohamed Abo Ali, of Colonia, New Jersey, who is appearing *pro se*, filed this action invoking the court's diversity jurisdiction. He sues: (1) American University of Antigua, Inc. ("AUA"), which he describes as "a private, foreign, for-profit educational institution incorporated in the [S]tate of Florida" that has "its university campus located" in Antigua; and (2) Manipal Education Americas, LLC ("MEA"), which he describes as "a limited liability company incorporated in the State of New York." (ECF 1, at 3.) Plaintiff describes MEA as "the parent company of AUA and [that it] oversees [AUA's] financial, administrative, and operational functions"; he alleges that MEA has its principal place of business in New York, New York. (*Id.* at 3-4.)

      In his complaint, Plaintiff seeks, among other relief, unspecified damages and declaratory relief, as well as injunctive relief, including "a Temporary Restraining Order and Preliminary Injunction[] compelling [AUA and MEA] to immediately release [his] diploma and all necessary documentation for [Educational Commission for Foreign Medical Graduates ("ECFMG")] certification to prevent irreparable harm to his residency prospects." (*Id.* at 12.) He has also filed, with his complaint, an order of show cause for a preliminary injunction and a temporary

restraining order ("OTSC") in which he seeks, among other relief, the following immediate injunctive relief: (1) "a Temporary Restraining Order compelling [AUA and MEA] to immediately release [his] diploma and transcript directly to ECFMG within 24 hours"; (2) "a Non-Retaliation Order [p]rohibiting [AUA and MEA], their officers, employees, agents, and representatives from taking any retaliatory action against [him] for seeking this relief." (ECF 6, at 11.)

By order dated March 13, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action for lack of subject matter jurisdiction, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

## BACKGROUND

Plaintiff alleges the following: Plaintiff is a graduate of AUA's medical school. "He completed 1 year of pre-clinical medicine at AUA's campus in Antigua and 3.5 years in the U.S.,

including two years of clinical rotations at AUA-affiliated hospitals in New York." (ECF 1, at 4.) Plaintiff completed his requirements for graduation on September 13, 2024; 14 days later, on September 27, 2024, he registered for medical residency placement. "Plaintiff requires his diploma from AUA to obtain ECFMG certification, a mandatory requirement to start residency at any of the 17 hospitals he interviewed with." (*Id.*) Approximately one month later, on October 29, 2024, he "received an email from [AUA and MEA] with FedEx tracking information for his Medical Diploma and official transcript." (*Id.*) On November 18, 2024, however, he received from either AUA, MEA, or both an email "stating that the [United States Department of Education ("DOE")] has required AUA to cancel Plaintiff's Title IV [loan] disbursement[s] for his Fall 2023 semester . . . and that AUA has arranged for a private loan through Richland Bank to replace the canceled disbursements." (*Id.*)

AUA "has been under HCM2 [DOE oversight], which is the most severe level of oversight from the [DOE's Office of Federal Student Aid ("FSA"),] starting [in the] Fall [of] 2023, [and] coinciding with" Plaintiff's Fall 2023 semester attending AUA. (*Id.*) That level of oversight "requires institutions to cover student aid disbursements upfront and then seek reimbursement from" the DOE. (*Id.*) AUA and MEA "failed to request Plaintiff's federal loan through FSA properly and [are] subsequently attempting to compel payment from Plaintiff by wrongfully withholding his degree without clarification, prior notice, or due process." (*Id.*) They "have failed to provide any official documentation or federal directive from the DOE confirming this requirement despite Plaintiff's numerous requests for documentation or specific reference to the alleged mandate to cancel his Title IV loans." (*Id.*)

Since December 4, 2024, AUA's and MEA's "representatives have intentionally misled Plaintiff by providing conflicting instructions, directing him to complete unnecessary forms, and

delaying responses while refusing to provide a clear resolution for obtaining a private loan." (*Id.* at 5.) AUA and MEA have also "repeatedly and knowing made false claims to Plaintiff that he was not eligible for Title IV loans for [part of his academic career] when, in fact, Plaintiff was eligible for [those] loans, but [AUA and MEA] failed to request [them] properly." (*Id.*) They further "acted in bad faith and deliberately withheld information about [AUA's] HCM2 designation and financial liability to pressure Plaintiff to obtain a private loan to pay tuition in order to receive his degree in time to participate in the residency match." (*Id.*) "As a result of [AUA's and MEA's] actions, Plaintiff remains uncertified for residency, jeopardizing his medical career, and has a balance [owed to AUA and/or MEA] of $53,000."[1] (*Id.*)

## DISCUSSION

### A.    Subject matter jurisdiction

The court appears to lack subject matter jurisdiction to consider this action. The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has subject matter jurisdiction only when a "federal question" is presented or, when claims under state law are asserted under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any

---

[1] On March 17, 2025, Plaintiff filed an "Updated Affidavit and Notice of Supplemental Information in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction." (ECF 10.) In that submission, Plaintiff informs the Court that, on March 17, 2025, he "was officially matched into a Radiology residence program, a specialty that is among the most highly competitive in the" United States. (*Id.* at 1.) He also states that his "residency is set to begin in July 2025, but ECFMG certification is a mandatory requirement for [him] to start. Without it, [his] residency position with be revoked, jeopardizing future residence admissions and effectively ending [his] medical career." (*Id.*)

stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) (internal quotation marks omitted)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

### 1.    Federal question jurisdiction

While Plaintiff alludes to the federal constitution by asserting that his right to due process has been violated (ECF 1, at 4, 7, 8-9), he does not allege facts sufficient to establish the court's federal question jurisdiction to consider his claims. To invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (internal quotation marks omitted)). Mere invocation of federal question jurisdiction, without any facts demonstrating a federal law claim, does not create federal question jurisdiction. *See Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996).

Plaintiff specifically invokes the court's diversity jurisdiction, not its federal question jurisdiction. (ECF 1, at 3.) He also asserts, however, that AUA and/or MEA – two private institutions – violated his right to due process (*id.* at 8-9), which is a federal constitutional right.

5

Thus, Plaintiff may be attempting to assert claims of federal constitutional violations under the court's federal question jurisdiction. His allegations with respect to any such claims are, however, conclusory; he has not pleaded any facts that show that the court has federal question jurisdiction of his claims. Plaintiff's allegations regarding AUA and MEA appear to arise from alleged violations of state law, not federal law. Thus, inasmuch as Plaintiff invokes the court's federal question jurisdiction, the Court dismisses his claims for lack of subject matter jurisdiction.[2] *See* Fed. R. Civ. P. 12(h)(3). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead his claims in an amended complaint in which he alleges facts showing that the court has federal question jurisdiction of the claims raised in his amended complaint.

---

[2] Even if Plaintiff had alleged non-conclusory facts as to violations of due process, to the extent that he asserts claims of federal constitutional violations under 42 U.S.C. § 1983, the Court must dismiss those claims. A claim for relief under Section 1983 must allege facts showing that a defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted, emphasis in original)). Private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)).

The defendants are private entities, and Plaintiff alleges nothing to suggest that they have conducted themselves as state actors with regard to the injuries they allegedly inflicted on him. Thus, in the alternative, to the extent that Plaintiff asserts claims of federal constitutional violations under Section 1983, including claims of due process violations, the court dismisses those claims.

2.      **Diversity jurisdiction**

Plaintiff also does not allege facts sufficient to establish the court's diversity jurisdiction to consider any claims under state law that he is attempting to assert. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that he and the defendants are citizens of different States.[3] *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he is domiciled, which is defined as the place where the individual "has his true fixed home . . . and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* A corporation is, however, a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve center," usually its main headquarters). "[A] limited liability company . . . takes the citizenship of each of its members." *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

There is a second component of diversity jurisdiction – the amount in controversy must be in excess of the sum or value of $75,000. *See* § 1332(a). The sum claimed by a plaintiff will

_____

[3] The court's diversity jurisdiction is also available where the plaintiff is a citizen of an American State and the defendant is the citizen or subject of a foreign state. *See* 28 U.S.C. § 1332(a)(2). In addition, the court's diversity jurisdiction covers controversies in which the plaintiff is a citizen of an American State and where one defendant is a citizen of a different American State and another defendant is a citizen or subject of a foreign state. *See* § 1332(a)(3).

control if it is made in good faith. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). The Court can dismiss a diversity action for failing to plead that the amount in controversy exceeds the sum or value of $75,000, but only if there is "a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke [diversity] jurisdiction." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *see Ochoa v. Interbrew Am., Inc.*, 999 F.2d 626, 629 (2d Cir. 1993) ("[I]n determining whether a challenged jurisdictional amount has been met, district courts are permitted only to assess the allegations in a complaint and not the validity of any asserted defenses."). "A plaintiff seeking to invoke diversity jurisdiction 'cannot[,] [however,] meet its burden of proof with mere conclusory allegations of indirect or speculative value.'" *Chavez v. Maker*, No. 1:18-CV-7965 (RA) (GWG), 2019 WL 4926348, at *4 (S.D.N.Y. Oct. 7, 2019) (citation omitted), *report & recommendation adopted sub nom.*, *Chavez v. Wylie*, 2019 WL 6873806 (S.D.N.Y. Dec. 17, 2019), *appeal dismissed*, No. 20-383, 2020 WL 4332758 (2d Cir. May 28, 2020); *Weir v. Cenlar FSB*, No. 7:16-CV-8650 (CS), 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (reasoning that "the jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible" (citation omitted)).

Plaintiff alleges that he is a citizen of the State of New Jersey. (ECF 1, at 2.) He also alleges that AUA is a corporation that is "a private, foreign, for-profit educational institution incorporated in the [S]tate of Florida" and that it has "its university campus located" in Antigua. (*Id.* at 3.) Thus, under Section 1332(c)(1), AUA would appear to be both a citizen of Florida and of Antigua.[4] Plaintiff further alleges that MEA is a limited liability company (an "LLC") that is

---

[4] To the extent that Plaintiff alleges that AUA, along with MEA, has its principal place of business somewhere within the State of New York as opposed to Antigua (ECF 1, at 3), AUA

"incorporated in the State of New York" and that has "its principal place of business [in] . . . New York, New York." (*Id.*) Because MEA is alleged to be a limited liability company, the rule for determining citizenship of a corporation is inapplicable. *See, e.g.*, *Raymond v. Essen Foods, Inc.*, No. 1:23-CV-3316 (PKC), 2023 WL 3072260, at *1 (S.D.N.Y. Apr. 25, 2023) (limited liability company is not a corporation). As mentioned above, the state citizenship(s) of a limited liability company is/are determined by ascertaining the state citizenships of all of its members. *See Bayerische Landesbank, N.Y. Branch*, 692 F.3d at 49. The Court cannot determine MEA's state citizenship(s) based on the information pleaded in the complaint. Because the complaint lacks information concerning the state citizenship(s) of MEA's member(s), the Court cannot determine whether the parties are diverse for the purpose of this action.

Nor does Plaintiff allege facts sufficient to show that the amount in controversy requirement for a diversity action – an amount in excess of the sum or value of $75,000 – has been satisfied in this action. That is because Plaintiff alleges that the tuition balance that is the basis of his dispute with the defendants amounts only to $53,000. (ECF 1, at 5.)

Accordingly, inasmuch as Plaintiff asserts claims under state law under the court's diversity jurisdiction, the Court dismisses this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court, however, grants Plaintiff leave to replead his claims in an amended complaint in which he alleges facts showing that the court has diversity jurisdiction of his claims under state law. Plaintiff must allege facts showing that none of the entities named as defendants in his amended complaint are a citizen of the same State as Plaintiff, that is, a citizen of the State of New Jersey. He must also allege facts showing that the amount in controversy in

---

would be considered to be a citizen of the State of New York instead of Antigua. *See* § 1332(c)(1).

this action satisfies the jurisdictional amount for a diversity action; he must allege nonconclusory facts showing that the amount in controversy exceeds the sum or value of $75,000.

**B.    Venue**

Plaintiff has not alleged facts sufficient to show that this court is a proper venue for this action. The applicable venue provision for this action is found at 28 U.S.C. § 1391(b), which provides that, unless otherwise provided by law, a federal civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, "a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled." § 1391(c)(1). Any other entity, if a defendant, however, "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(2). With respect to a defendant that is a corporation:

> in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

§ 1391(d).

Plaintiff alleges that AUA, a corporation, is incorporated in the State of Florida and that "its university campus" is located in Antigua. (ECF 1, at 3.) He also alleges that MEA, a limited liability company, has its principal place of business in New York, New York, and that it owns AUA. (*Id.*) In addition, however, Plaintiff alleges that this court has personal jurisdiction over

both of the defendants because *both* defendants "are headquartered in New York, regularly conduct business in New York, and/or have sufficient minimum contacts in New York," and that *both* of their "principal office[s]" are within this judicial district. (*Id.*) He further alleges that this court is a proper venue for this action "because a substantial part of the events, acts, and omissions giving rise to [his] claims occurred" within this judicial district. (*Id.*)

Plaintiff may have alleged facts sufficient to show, for the purposes of venue, MEA's residency within this judicial district. His allegations as to the residency of AUA are, however, inconsistent and/or conclusory. He alleges that AUA is a Florida corporation with its campus in Antigua, but with its headquarters and principal offices in an unspecified location within the State of New York. This does not show that AUA is a resident of any of the four federal judicial districts within the State of New York, *see* 28 U.S.C. § 112, let alone, this judicial district – the Southern District of New York[5] – under the requirements of Section 1391(c)(2) and (d). Because the Court cannot ascertain AUA's residency for venue purposes, the Court cannot determine whether this court is a proper venue for this action under Section 1391(b)(1).

Plaintiff has also not alleged facts sufficient to show that this court is a proper venue for this action under Section 1391(b)(2). Plaintiff, a citizen and resident of New Jersey, seems to allege that he attended AUA's medical school in Antigua for one year, and in unspecified locations within the United States for three and one half years, including "two years of clinical rotations at AUA-affiliated hospitals in New York." (ECF 1, at 4.) He does not specify, however, where within the State of New York he participated in those clinical rotations. Plaintiff also

---

[5] The Southern District of New York is comprised of the following New York State counties: (1) New York (New York City Borough of Manhattan);(2) Bronx (New York City Borough of the Bronx); (3) Westchester; (4) Dutchess; (5) Rockland; (6) Orange; (7) Putnam; and (8) Sullivan. *See* 28 U.S.C. § 112(b).

alleges that AUA is incorporated in the State of Florida and has "its university campus" in Antigua, but that it has its principal place of business somewhere within the State of New York, within this judicial district. (*Id.* at 3.) He further alleges that MEA, a limited liability company and AUA's owner, has its principal place of business in New York, New York, within this judicial district. (*Id.*) In addition, Plaintiff seems to allege that the bases of his dispute are AUA's – not MEA's – (1) failure to properly apply for Plaintiff's Title IV federal loan funds from the DOE; (2) failure to provide Plaintiff with notice and proper information with regard to the DOE's refusal to disburse federal loan funds to AUA; (3) its efforts to compel Plaintiff to obtain a loan from a bank to pay an owed tuition balance of $53,000; and (4) its withholding of Plaintiff's diploma and transcript until payment of that balance has been made.[6] (*Id.* at 4-5.) Thus, because it is unclear whether a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district (as opposed to in New Jersey, where Plaintiff resides; or somewhere else within the United States, including where Plaintiff participated in clinical rotations; or in Antigua), it is unclear that this court is a proper venue for this action under Section 1391(b)(2). The Court therefore also grants Plaintiff leave to replead why this court is proper venue for this action in an amended complaint.

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that

---

[6] Plaintiff does allege, however, that MEA "oversees [AUA's] financial, administrative, and operational functions." (ECF 1, at 4.)

district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation omitted)). Because Plaintiff may be able to allege additional facts to show that this court has subject matter jurisdiction to consider this action and is a proper venue for this action, the Court grants Plaintiff 30 days' leave to replead his claims in an amended complaint in which he alleges facts showing that the court has subject matter jurisdiction to consider his claims and is a proper venue for this action, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## CONCLUSION

The Court dismisses this action for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), but grants Plaintiff 30 days' leave to replead his claims in an amended complaint in which he alleges facts showing that the court has subject matter jurisdiction to consider his claims and is a proper venue for this action, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for lack of subject matter jurisdiction.[7] *See* Fed. R. Civ. P. 12(h)(3).

---

[7] The Court will not address Plaintiff's requests for immediate injunctive relief in his complaint and OTSC unless and until Plaintiff files an amended complaint addressing the defects described in this order. If Plaintiff does not file an amended complaint within the time granted, the Court will dismiss this action for lack of subject matter jurisdiction and, therefore, will be unable to consider any requests for immediate injunctive relief.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a judgment is entered.

SO ORDERED.

Dated:   March 24, 2025
         New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                    Chief United States District Judge

14